# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| PAVEL ZISSU and AISE ZISSU | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 2394 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| IH2 PROPERTY ILLINOIS, L.P. and THE BROKERAGE IL INC. d/b/a INVITATION HOMES, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Pavel Zissu and Aise Zissu bring suit against the owner of the property where they resided, IH2 Property Illinois, L.P. The Zissus claim that after a Cook County Sheriff turned over possession of the premises to IH2 pursuant to an eviction order, the company removed all of their personal property from the premises and put it outside. In their complaint, the Zissus assert various torts: negligence (Count I), trespass to chattels (Count II), conversion (Count III), bailment (Count IV), and intentional infliction of emotional distress (Count V). For the reasons stated below, the Court denies IH2's motion to dismiss [12].[1]

## Factual Background

Prior to January 2015, the Zissus resided at a property in the City of Chicago owned by IH2. *See* Compl. ¶¶ 10, 15, 17. On October 16, 2014, a judge from the Circuit Court of Cook County issued an order for possession, allowing IH2 to evict the Zissus. *See id.* ¶ 17. The order was executed by a Cook County Sheriff on January 26, 2015. *See id.*

---

[1] After IH2 filed its motion to dismiss, Defendant Invitation Homes, an agent of IH2, has been added to the case. *See* Compl. ¶ 9. Invitation Homes has filed a motion to join IH2's motion to dismiss [45]. That motion is granted.

Once IH2 was given possession of the premises, its agents took all of the Zissus' personal property that was in the apartment and placed it outside on the curb. *See id.* ¶ 25–26. The property, which included jewelry, furniture, and personal documents, was then either stolen or damaged. *See id.* ¶¶ 24, 27.

## **Legal Standard**

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cty. of Boone, Ill.*, 483 F.3d 454, 457 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept [ ] as true all well-pleaded facts alleged, and draw[ ] all possible inferences in [the plaintiff's] favor." *Tamayo*, 526 F.3d at 1081.

A complaint, however, must also allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Plausibility, however, "does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

## Analysis

This is a diversity suit. *See* 28 U.S.C. § 1332. As such, we apply state substantive law and federal procedural law. *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009). Both parties cite Illinois law in their briefing, so the Court will apply Illinois law. *See R.E. Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426–27 (7th Cir. 1991).

**I.    Negligence**

The Zissus allege that IH2 negligently removed their personal property from the premises following the eviction, causing much of it to be damaged or stolen. *See* Compl. ¶¶ 28–36. "To state a cause of action for negligence, a complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Simpkins v. CSX Trasmp., Inc.*, 965 N.E.2d 1092, 1096 (Ill. 2012). In its motion to dismiss, IH2 argues that the Zissus cannot state a claim for negligence because IH2, as the landlord, did not owe a duty to protect personal property left on the premises following the eviction.

Before addressing the merits of IH2's argument, the Court must resolve an issue that arose in the briefs regarding the proper stage to decide the question of IH2's duty. The Zissus, in their response to the motion to dismiss, seem to suggest that whether a duty existed is a question that should be left for summary judgment. *See* Resp. 6 ("Illinois law mandates that the determination of whether defendant [owes plaintiff a duty] is a question of law and such question is properly addressed by the court on a motion for summary judgment." (citation omitted)). But the cases cited in support of this proposition state that whether a duty existed *can* be decided at the summary judgment stage, not that it must. *See Horrell v. City of Chi.*, 495 N.E.2d 1259, 1261 (Ill. 1986) (rejecting the plaintiff's argument that the existence of a duty could not be addressed in a motion for summary judgment). The existence of a duty is a question of law, *see Simpkins*,

965 N.E.2d at 1096, and, although it can depend on the facts of a particular case, it can be addressed on a motion to dismiss, *see August, Bishop & Meier, Inc. v. Premium Link, Ltd.*, 738 F. Supp. 1166, 1168 (N.D. Ill. 1990).

Turning to the merits of IH2's motion, the Court must decide whether IH2 owed a duty to the Zissus with respect to the property left behind in the unit. The source of the duty may be statutory or from common law. *See Barnett v. Zion Park Dist.*, 665 N.E.2d 808, 812 (Ill. 1996). In many states, the legislature has spelled out the extent of a landlord's obligations with respect to personal property left behind by a tenant after an eviction. Some require a landlord to store the former tenant's personal property for a certain period of time. *See, e.g.*, Neb. Rev. Stat. § 69-2303 (requiring a landlord to provide notice of the property left on the premises and to store the property for no less than seven days); N.M. Stat. Ann. § 47-8-34.1 (stating that a landlord has no obligation to store personal property left on the premises after three days following the eviction). Others expressly shield a landlord from any liability with respect to property left by former tenants. *See, e.g.*, Fla. Stat. § 83.62(2) (allowing the landlord to remove personal property found on the premises and stating that the landlord shall not be liable for damage or loss of the property after it is removed); Ga. Code Ann. § 44-7-55(c) (same). Unfortunately, the Forcible Entry and Detainer statutes in Illinois are silent on this issue. But a number of other states that—like Illinois—lack a controlling statutory provision have addressed this point.

In those states, courts have relied upon the common law of bailment to conclude that, although a landlord does not owe a duty to care for a former tenant's personal property as a general matter, such a duty does arise when a landlord participates in removing the property from the premises or otherwise assumes control or possession over the property. For example, in *Khan v. Heritage Property Management*, an Iowa appellate court found no general duty, but then

4

looked to the law of bailment to determine whether a duty might arise out of the landlord's role as a constructive bailee. 584 N.W.2d 725, 729 (Iowa Ct. App. 1998). Ultimately, because the sheriff had removed the tenant's property from the apartment in that case, the court found that a bailment was not established and the landlord did not have a duty to care for the property.

In *Christensen v. Hoover*, the Colorado Supreme Court established a similar framework for determining the extent of a landlord's duty after eviction. 643 P.2d 525, 528 (Colo. 1982) (en banc). Initially, the court held that "[a]fter the tenancy has been lawfully terminated, the landlord is under no obligation, statutory or otherwise, to store or maintain the tenant's possessions." *Id.* The court went on to say, however, that "if the landlord actively participates in removing the tenant's property from the premises, or if he assumes possession or control of the tenant's property after the writ of restitution has been executed, a bailment is created between the landlord and the tenant which may subject the landlord to liability for damage to the tenant's property." *Id.* There, the Colorado court ultimately held that there was a bailment relationship between the tenants and the landlord (as well as between the tenant and the moving company the landlord had hired to move the property). *Id.* at 529.

Because the Illinois Supreme Court has not addressed this issue, this Court must attempt to divine how the Supreme Court would rule. *See Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004) ("The duty of a federal court in a diversity suit is to predict what the state's highest court would do if presented with the identical issue."). In fact, only two courts have addressed the question of a landlord's duty under Illinois law. The first is the case cited by both parties, *Centagon, Inc. v. Bd. of Dirs. of 1212 Lake Shore Drive Condo. Ass'n*, 2001 WL 1491523 (N.D. Ill. Nov. 21, 2001). In *Centagon*, a condo association had obtained a judgment granting exclusive possession of a unit that had belonged to the plaintiff. *See id.* at *2. The

5

sheriff's office executed the eviction and, with the help of a moving company hired by the sheriff, removed the personal property onto the curb and sidewalk. *See id.*

Noting that the question of the condo association's duty was one of first impression in Illinois, the court held that the facts in that case were "insufficient to impose an affirmative duty upon defendants to care for any personal property left in the Unit after eviction." *Id.* at *6. The mere fact that the representatives of the condo association had been present and had observed the eviction and removal of the property was not enough to establish a duty of care. *Id.* The plaintiffs argued that a bailment relationship had been formed, but because the sheriff had been the one that had removed the property, the court found that there was no evidence that defendants had taken possession of the property. *Id.* at *7.

Since *Centagon* was decided, an Illinois appellate court applied a similar analytical framework in *Dargis v. Paradise Park, Inc.*, 819 N.E.2d 1220, 1231 (Ill. App. Ct. 2004). There, the court concluded that, while a landlord has no duty in such situations as general matter, an exception is created when the landlord chooses to care for the property. 819 N.E.2d 1220, 1231 (Ill. App. Ct. 2004) (citing *Christensen*, 643 P.2d at 528). Ultimately, the court in *Dargis* was not required to apply the exception because the eviction had been unlawful and that alone was sufficient to place a duty on the landlord. *See id.* at 1231–32. This decision is helpful because state appellate court decisions, although not binding, constitute persuasive authority. *See AAR Aircraft & Engine Grp., Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001) ("When a state supreme court has not spoken on an issue, the decisions of the state's intermediate appellate courts are authoritative unless we have a compelling reason to doubt that they have stated the law correctly.").

In the end, the Court agrees with the reasoning in these cases and finds that the Illinois Supreme Court would hold that, although a landlord does not have a general duty under common law to care for the personal property of a former tenant after a proper and legal eviction, a duty of care does arise when a landlord acts as an actual or constructive bailee with respect to the tenant's property. Because the complaint states a claim for bailment as further discussed below, the Court finds that Plaintiffs have sufficiently alleged the existence of a duty and a breach of that duty to survive a motion to dismiss as to their negligence claim.

## II.     Bailment

In Count IV of the complaint, the Zissus allege that a constructive (or implied) bailment was created when IH2 took control over the personal property that had been left behind. *See* Compl. ¶¶ 45–49. In its motion to dismiss, IH2 argues that the Zissus have failed to state a claim because IH2 never took possession of the personal property. *See* Mtn. Dismiss 11–12.

"A bailment occurs when goods, or other personal property, are delivered to another, who under contract either express or implied has agreed to accept delivery and deal with the property in a particular way." *Liddle v. Salem Sch. Dist. No. 600*, 619 N.E.2d 530, 531 (Ill. App. Ct. 1993). To recover under a bailment theory, the plaintiff must allege: (1) an express or implied agreement to create a bailment, (2) delivery of the property, (3) the bailee's acceptance of the property, and (4) the bailee's failure to return the property or the bailee's delivery of the property in a damaged condition. *See Am. Ambassador Cas. Co. v. City of Chi.*, 563 N.E.2d 882, 884 (Ill. App. Ct. 1990).

An implied bailment—also called a constructive bailment—"may be found where the property of one person is voluntarily received by another for some purpose other than that of obtaining ownership." *Id.* at 885. The implied bailment may be deduced from the circumstances surrounding the transaction, including the "benefits received by the parties, their intentions, the

kind of property involved, and the opportunities of each to exercise control over the property." *DW Data, Inc. v. C. Coakley Relocation Sys., Inc.*, 951 F. Supp. 2d 1037, 1048 n.8 (N.D. Ill. 2013); *see also Wall v. Airport Parking Co. of Chi.*, 244 N.E.2d 190, 192–93 (Ill. 1969).

The Zissus contend that, by actively removing the property from the premises and putting it on the street, IH2 assumed control over the property. *See* Compl. ¶ 47. Unlike in *Centagon*, in which the defendants had watched the sheriff take out the property, IH2 itself took possession of the property and put it outside. *See Centagon*, 2001 WL 1491523, at *7. Had IH2 taken the property to a storage facility, there would be no question that a constructive bailment was established and IH2 would be liable for any damage that occurred to the property. *Cf. Christensen*, 643 P.2d at 529; *Khan*, 584 N.W.2d at 730.

IH2's argument that the sheriff turned over possession only of the premises, and not the personal property, is beside the point. The Court's determination that the complaint states a bailment claim is not based on the eviction order. It was IH2's alleged actions after the sheriff had turned over possession of the premises to IH2 that gave rise to the bailment relationship. Of course, Plaintiffs ultimately may not be able to establish this claim after discovery. But the allegations are sufficient at the pleading stage.

### III.  Trespass to Chattels and Conversion

Trespass to personal property involves an injury to or interferences with possession of chattel, with or without physical force. *See Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1229 (N.D. Ill. 2005).[2] "According to the Restatement of Torts, there are two ways to commit this tort: 'A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another.'" *Id.* (citing

---

[2] There are very few Illinois cases addressing the elements for trespass to chattels. *See Sotelo*, 384 F. Supp. 2d at 1229; *Ogbolumani v. Young*, 2015 WL 1284064, at *7 (Ill. App. Ct. 2015) (unpublished).

Restatement (Second) of Torts § 217). To establish a claim for conversion, the plaintiff must prove that "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *In re Karavidas*, 999 N.E.2d 296, 310 (Ill. 2013). The difference between trespass to chattels and conversion is a matter of degree. *See Obi v. Chase Home Fin., LLC*, 2010 WL 4810609, at *4 (N.D. Ill. 2010).

IH2 argues that the Zissus cannot state a claim for trespass to chattels or conversion because IH2 never dispossessed or wrongfully assumed control of the property. *See* Mtn. Dismiss 8–11. Contrary to IH2's position, however, the complaint alleges enough to state a claim for conversion and trespass of chattels. The Zissus assert that IH2 removed their property and placed it outside. *See* Compl. ¶ 25. That act, by itself, is enough at this stage to satisfy the requirement that IH2 assumed control over the property (conversion) and dispossessed the Zissus of the property or intermeddled with the property (trespass to chattels).

IH2 further argues that the Zissus never made a demand for the property, and thus have not alleged all the elements for a conversion claim. *See* Mtn. Dismiss 11. Illinois courts do not require the plaintiff to allege a demand if the defendant had already disposed of the property, making the demand for possession fruitless. *See Monroe Cty. Water Co-op v. City of Waterloo*, 437 N.E.2d 1237, 1240 (Ill. App. Ct. 1982). That is exactly the situation here. Once IH2 disposed of the property on the sidewalk, a demand by the Zissus would have been futile. Thus, the complaint sufficiently alleges a claim for conversion.

### IV. Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress occurs when (1) the conduct involved is extreme and outrageous, (2) the defendant intended that his conduct inflict severe emotional

distress, or knew that there was a high probability that the conduct would cause severe emotional distress, (3) the conduct does in fact cause severe emotional distress. *See Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003).

IH2 argues that the Zissus have not alleged sufficient facts to sustain a cause of action for intentional infliction of emotional distress. *See* Mtn. Dismiss 12–14. The Court disagrees. The complaint alleges that IH2 took all of the personal property left on the premises and put it outside where it was stolen or damaged. *See* Compl. ¶ 25. This included expensive jewelry, medication, and sensitive documents containing personal information. *See id.* ¶ 53. The Zissus allege that IH2 did so with the intent to cause distress, *id.* ¶ 52, and that the loss of their property did in fact cause distress, *id.* ¶53. At this stage, the Zissus have done enough to state a claim for intentional infliction of emotional distress.

## Conclusion

For the reasons stated herein, the Court denies IH2's motion to dismiss [12].


**IT IS SO ORDERED.**                   **ENTERED   1/19/16**

                                                   _____

                                                   **John Z. Lee**
                                                   **United States District Judge**